IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 22–108–BLG–SPW |
| Plaintiff, | |
| vs. | ORDER |
| JESSE LEE HOPKINS, | |
| Defendant. | |

Defendant Jesse Lee Hopkins has three pending requests for relief. First, Hopkins has filed a habeas petition under 28 U.S.C. § 2255, arguing that trial counsel was ineffective for failing to object to a sentencing enhancement based on a finding that Hopkins's prior Montana robbery conviction was a crime of violence. (*See* Docs. 175, 176.) Second, Hopkins seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). (*See* Docs. 120, 146.) Counsel was appointed to represent Hopkins on both matters, (*see* Docs. 120, 154), and the government opposes both motions, (*see* Docs. 152, 185, 191).[1] Third, moving pro se, Hopkins also seeks to withdraw Hopkins's guilty plea. (*See* Doc. 158.) Fundamentally,

---

[1] Hopkins has also filed numerous contemporaneous pro se letters. (*See, e.g.*, Docs. 159, 169, 172, 174, 178, 181, 186.) The arguments considered herein are those raised by counsel.

1

Hopkins argues that the sentence received would not have been enhanced with a prior crime of violence had that analysis been performed today. While Hopkins may be correct, the present motions do not provide relief for the reasons explained below.

I.  **Background**

In September 2022, Hopkins was arrested on an eight-count indictment charging bank fraud and aggravated identity theft for forging and cashing stolen checks using other people's signatures in violation of 18 U.S.C. §§ 1344(2), 1028A(a)(1). (*See* Doc. 1.) In December 2022, Hopkins was charged with the additional offense of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*See* Doc. 21 (superseding indictment).) In February 2023, Hopkins pled guilty pursuant to a plea agreement to three counts of the superseding indictment, specifically one count of bank fraud (Count 3), one count of aggravated identity theft (Count 7), and felon in possession (Count 9). (*See* Docs. 43, 50, 54, 62, 105.) At sentencing in May 2023, the advisory Guideline range was enhanced in part because this Court concluded that Hopkins's prior Montana robbery conviction qualified as a crime of violence. (*See* Doc. 99 at 4–9; *see also* PSR ¶ 29). As a result, Hopkins was subject to a base offense level of 20, *see* USSG §2K2.1(a)(4)(A); *see* USSG §4B1.2(a), instead of a base offense level of

2

14, *see* USSG §2K2.1(a)(6).[2] Defense counsel objected to this finding at sentencing, arguing that Montana's robbery statute, specifically § 45–5–401(1)(c), was overbroad. (*See* PSR Addendum, Doc. 89 at 31.) However, this Court concluded that Hopkins had been convicted under § 45–5–401(1)(b), and that subsection (1)(b) outlines a crime of violence. (Doc. 99 at 8–9.) Accordingly, Hopkins's total offense level was 21 and, with a criminal history category VI, the advisory Guideline range was 77 to 96 months for Counts 3 and 9. (*See id.* at 21.) Count 7 was subject to a mandatory 24-month consecutive sentence. Ultimately, Hopkins received a low-end Guideline sentence of 77 months on both Counts 3 and 9 and 24 months consecutive on Count 7, for a total custodial sentence of 101 months. (Doc. 86 at 2.) Hopkins also received a five-year term of supervision to follow. (*Id.* at 3) Hopkins appealed, (Doc. 90), but voluntarily dismissed that appeal in September 2023, (*see* Doc. 117).

## II.   Habeas

Hopkins seeks federal habeas relief under 28 U.S.C. § 2255, arguing that trial counsel was ineffective for failing to object to the sentencing determination that Hopkins's prior Montana robbery conviction was a crime of violence. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466

---

[2] Hopkins's trial counsel's belief that the base offense level would have been 18 in the absence of an enhancement was incorrect but did not impact the Guideline calculation or the sentence imposed. (*See* Doc. 176 at 5.)

3

U.S. 668 (1984). Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) "that counsel's representation fell below an objective standard of reasonableness," *id.* at 687–88, and (2) that any such deficiency was "prejudicial to the defense," *id.* at 692. "[I]t is unnecessary to consider the prejudice prong of Strickland if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To wit, the Supreme Court has cautioned that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Here, Hopkins argues that defense counsel was ineffective at sentencing because he failed to "lodge the proper objection" to the Court's crime of violence determination. More specifically, Hopkins argues that defense counsel failed to argue that (1) under the categorical approach, the Court was required to consider only the elements of the offense charged, not the underlying facts and (2) a Montana robbery conviction under Montana Code Annotated § 45–1–401(1)(b) is

4

not a crime of violence. Neither argument is persuasive under *Strickland*.[3]

## A.    Facts of Underlying Conviction

As to Hopkins's first argument, the Court correctly utilized the modified categorical approach to determine which subdivision of Montana's divisible robbery statute applied. (*See* Doc. 99 at 7–8.) As recognized by Hopkins, if a statute is "divisible," i.e., "lists alternative sets of elements, . . . the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *United States v. Werle*, 815 F.3d 614, 619 (9th Cir. 2016) (internal quotation marks omitted); (*see* Doc. 176 at 8). Hopkins does not dispute that Montana's robbery statute is divisible under this framework. (*See* Doc. 176 at 5.) Thus, it was appropriate for this Court to consider the state information charging Hopkins with robbery. (*See* Doc. 99 at 8.) While the sentencing transcript shows that the Court did note the specific facts of Hopkins's underlying offense in discussing the crime of violence analysis, that short statement is immediately followed with the qualifier: "but,

---

[3] Although Hopkins requests an evidentiary hearing, (Doc. 176 at 19), one need not be held if the issues can be conclusively decided based on the evidence in the record. *Blackledge v. Allison*, 431 U.S. 63, 76 (1977); *see United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) (explaining that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"). That is the case here.

again, we're looking strictly at the charging documents. . . . [a]nd that that specific subsection would result in a crime of violence." (*Id.*) Thus, the Court did not improperly rely on the facts of Hopkins's underlying conduct in assessing whether the 2007 robbery conviction was a crime of violence. Hopkins's first ineffective assistance claims fails because in the absence of error, the failure to object neither "fell below an objective standard of reasonableness" nor prejudiced the defendant. *Strickland,* 466 U.S. at 688.

### B.   Montana's Definition of "Bodily Injury"

Hopkins's second argument is equally unpersuasive. Hopkins argues that trial counsel should have argued that Montana robbery under Mont. Code Ann. § 45–5–401(1)(b) is not a crime of violence because "bodily injury" under Montana law "includes mental illness or impairment" and can thus be achieved without physical force. (Doc. 176 at 11.) Thus, according to Hopkins, Montana's robbery statute is not a crime of violence because it is broader than the generic offense of robbery. He argues that this conclusion is "best illustrated in the Ninth Circuit's decision[] in *United States v. Castro*, 71 F.4th 735, 739 (9th Cir. 2023)." (*Id.* at 10.) Indeed, in *Castro*, the Ninth Circuit rejected this Court's finding that a prior conviction under Montana's partner or family member assault statute, Mont. Code Ann. § 45–5–206(1)(a), was a crime of violence because Montana's definition of "bodily injury" is "unusual" in that it "includes mental illness or

impairment." 71 F.4th at 736 (quoting Mont. Code Ann. § 45–2–101(5)). The Ninth Circuit therefore held that "Montana explicitly defines bodily injury more broadly than the generic definition." *Id.* at 742 (internal quotation marks and alteration omitted); *see also United States v. DeFrance*, 124 F.4th 814, 818, 822 (9th Cir. 2024) (relying on *Castro* to hold that a conviction under Mont. Code Ann. § 45–5–206(1)(a) also does not qualify as a "misdemeanor crime of domestic violence" to support a conviction under 18 U.S.C. § 922(g)(9)).

The problem with Hopkins's ineffective assistance argument is that while the law has evolved through *Castro* and *DeFrance* to limit the finding of a "crime of violence" under Montana's statutory scheme, that was not the landscape at the time of Hopkins's sentencing. *Castro* was not decided until two months after Hopkins was sentenced and *DeFrance* not until another 18 months later. To the contrary, at the time of sentencing, the state of the law in this District was that this Court had rejected the argument that "bodily injury" could be committed without physical force. *See United States v. Castro*, CR 21–59–BLG–SPW, Docs. 36, 41, 52. As argued by the government, "[v]iewed from counsel's perspective at the time, not through the lens of hindsight, Hopkins's counsel was not ineffective for failing to make an argument that had already been rejected by the Court." (Doc. 185 at 11.) Because existing law provided no reasonable basis to challenge this Court's then-determination in *Castro*, Hopkins has not demonstrated that counsel's

7

refusal to pursue an objection on this ground fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *cf. Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (explaining that counsel "cannot be required to anticipate" a later court decision). For that same reason, Hopkins cannot show that trial counsel's alleged failure was prejudicial. Had the objection been made as argued by Hopkins now, it would have been rejected consistent with this Court's analysis in *Castro*. To the extent Hopkins was precluded from pursuing this argument further, such a limitation was the result of Hopkins's appeal waiver, not defense counsel's purported error.

### C.  Conclusion

Ultimately, whether Hopkins's prior conviction remains a crime of violence under the current law is a different inquiry than whether defense counsel was ineffective for failing to make that argument at sentencing. Because Hopkins's request for habeas relief turns on the latter, it is denied.

### D.  Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

8

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Hopkins's claims fail because counsel's performance did not fall below an objective standard of reasonableness nor cause prejudice. The § 2255 motion involves no open questions of law and no close factual questions. A COA is not warranted.

### III. Compassionate Release

On October 2, 2023, Defendant Jesse Lee Hopkins filed a pro se motion under 18 U.S.C. § 3582(c)(1)(A) seeking to reduce a 101-month federal sentence for bank fraud, aggravated identity theft, and felon in possession of a firearm.[4] (Doc. 120; *see* Doc. 86 (Judg.).) Hopkins projected release date is July 10, 2030. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed Feb. 3, 2025). On October 3, 2023, counsel was appointed to represent Hopkins. (Docs. 121, 122; *see also* Doc. 130.) Appointed counsel filed an amended motion on March 15, 2024. (Docs. 146, 148.) The government opposes. (Doc. 152.) For the reasons stated below, Hopkins's motion is denied.

---

[4] This is Hopkins's second motion for compassionate release. The first was filed in July 2023 before Hopkins entered federal custody and was denied for lack of jurisdiction. (Docs. 97, 101.)

9

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).

Here, Hopkins argues that extraordinary and compelling reasons for early release exist based on medical issues, mental health concerns, and a subsequent change in sentencing law. Because these arguments are not persuasive and a reduction is not warranted under the § 3553(a) factors, Hopkins's motion is denied.

### A.   Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Hopkins submitted a request to the warden on September 6, 2023. (Doc. 148-1.) That request was denied on September 19, 2023. (Doc. 148-2.) Hopkins has therefore exhausted the administrative remedies as required by statute.

## B.  Extraordinary and Compelling Reasons

Hopkins argues that extraordinary and compelling circumstances exist because of medical concerns and the fact that, if sentenced today, Hopkins's sentence would not have been enhanced by a prior conviction. Neither argument is compelling.

### 1.  Physical and Mental Condition

While the First Step Act does not define "extraordinary and compelling reasons," the Sentencing Commission provides explicit examples of such circumstances. *See* USSG §1B1.13. Relevant here, extraordinary and compelling reasons exist if "[t]he defendant is . . . suffering from a serious physical or medical condition. . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." §1B1.13(b)(1)(B). Such reasons also include if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." §1B1.13(b)(1)(C). Finally, a catchall provision in §1B1.13(b) provides for such "other circumstances or combination of circumstances" that are cumulatively of a similar gravity to those enumerated above. *See* §1B1.13(b)(5).

Here, Hopkins argues several physical and mental health issues that "need[]

11

constant care and management" have made the time spent in custody "harsher" than the average sentence. (Doc. 153 at 3.) Hopkins suffers from gastrointestinal issues (including ulcerative colitis and rectal abscesses), blood pressure issues, history of heart failure and stroke, kidney stones, testicular pain, asthma, Hepatitis C,[5] depression, suicidal ideation, and schizophrenia and schizoaffective disorder. (*See generally* Docs. 148-3, 148-4, 148-5.) Hopkins also suffered a traumatic brain injury while in state custody in 2018, (*see* Doc. 148-1 at 4–5; Doc. 148-4 at 15), and was repeatedly raped[6] by a cellmate while in federal custody in January 2024, contributing to an anal abscess, (*see* Doc. 148-3 at 32–34, 117–33). Hopkins was also raped while at Yellowstone Detention Facility. (*See* Doc. 148-4 at 19.)

The government argues that Hopkins's medical issues do not rise to the level of extraordinary and compelling because most of them existed at the time of sentencing and were exacerbated by Hopkins's own use of illegal substances and failure to follow treatment plans. According to the government, Hopkins's "issues are chronic and can be medically managed with appropriate care." (Doc. 152 at 9.)

---

[5] It appears Hopkins's Hepatitis C was successfully treated in custody. (*See* Doc. 148-3 at 51, 103; Doc. 148-5 at 49, 111, 127–29.)

[6] The compassionate release Guidelines were updated in 2023 to add a subsection specifically addressing when an inmate is sexually assaulted. To qualify under that provision, however, the act must be "committed by, or at the direction of, a correctional officer, an employee or contractor or the Bureau of Prisons, or any other individual who had custody or control over the defendant." §1B1.13(b)(4). Hopkins reported that he was assaulted by a fellow inmate.

The government is correct. Most of Hopkins's physical and mental conditions existed at the time of sentencing, (*see* PSR ¶¶ 74–84), and the record shows that a 2017 stroke was connected to Hopkins's serious drug use, (*see* Doc. 148-3 at 161–97 (medical records); Doc. 148-4 at 15–16 (stating that 2017 stroke was "reportedly due to IV drug use")). Most compellingly, Hopkins's medical records show that medical care is being provided by BOP as Hopkins "is being seen regularly by medical and psychiatric professionals. [Hopkins] is being prescribed appropriate medications to manage and treat [the identified] issues." (Doc. 152 at 9.) Based on the foregoing, Hopkins has not shown a diminished medical condition that qualifies as an extraordinary and compelling reason for release.

### 2.     Change in Law

If Hopkins could establish that extraordinary and compelling circumstances exist, changes in sentencing law may be considered by the Court when determining the extent of a sentence reduction. Generally,

> a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

§1B1.13(c). Here, as discussed above, at Hopkins's May 8, 2023 sentencing,

13

Hopkins's base offense level was increased from 14 to 20 under §2K2.1(a)(4)(A) based on a Montana robbery conviction from 2007, *see* Mont. Code Ann. § 45–5–401. (*See* PSR ¶ 29; Doc. 99 at 9.) With a total offense level of 21 and a criminal category VI, Hopkins's advisory Guideline range at the time of sentencing was 77 to 96 months. (*See* PSR ¶¶ 39, 51, 105; Doc. 99 at 21.)

If sentenced today, Hopkins argues that the 2007 Montana robbery conviction would not qualify as a prior crime of violence under *United States v. Castro*, 71 F.4th 735 (9th Cir. 2023), as discussed above. However, even assuming without deciding that Hopkins is correct, this argument is not an appropriate ground for a reduction under 18 U.S.C. § 3582(c)(1)(A) because it is inconsistent with §1B1.13(c). In the absence of an independent extraordinary and compelling reason for early release under §1B1.13, the fact that the law changed after sentencing in this matter is not a valid basis for a reduction.[7] *Compare with United States v. Nava*, 2023 WL 8281596 (D. Mont. Nov. 30, 2023) (analyzing *Castro*

---

[7] To the extent Hopkins maintains that his 2007 conviction never should have qualified as a crime of violence, a collateral attack on a mistake purported to have occurred at the time of sentencing sounds in habeas, not compassionate release. *See United States v. Hart*, 2024 WL 3974230, at *4 (E.D. Va. Aug. 28, 2024) (explaining the difference between a collateral attack and a request for compassionate release based on a subsequent change in law). The First Step Act and the Guidelines were intended to provide relief if an intervening change in law would warrant a substantially shorter term of imprisonment; they are not a new avenue for attacking the validity of an underlying sentence. *See United States v. Davis*, 99 F.4th 647, 656 (4th Cir. 2024) ("[A] defendant cannot challenge the validity of a conviction or sentence in a compassionate release motion.").

under §1B1.13(b)(6) not §1B1.13(c)).

Based on the foregoing, Hopkins has not shown extraordinary and compelling reasons for early release.

C.     **Section 3553(a) Factors**

Even if Hopkins had shown a reduction was warranted, demonstrating an extraordinary and compelling reason to reduce a sentence meets only one element of § 3582(c)(1)(A). To determine whether relief is appropriate, a court must also consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Here, Hopkins forged approximately $2,300 worth of checks and was in possession of a loaded 9mm semi-automatic pistol. (PSR ¶¶ 11–23.) When law enforcement attempted to arrest Hopkins, a standoff ensued, during which Hopkins

15

repeatedly threatened self-harm. (PSR ¶ 19.) As discussed above, Hopkins received a sentencing enhancement based on a prior robbery conviction, which resulted in a total offense level of 21. (PSR ¶ 39.) Hopkins's criminal history runs approximately 9 pages of the PSR, (*see* PSR ¶¶ 41–63), and, with a total of 14 criminal history points, resulted in a criminal history category VI, (PSR ¶¶ 49–51). With a total offense level of 21 and a criminal history category VI, Hopkins's advisory Guideline range was 77 to 96 months. (PSR ¶ 105.) Hopkins received a low-end Guideline sentence of 77 months. (Doc. 86.) Hopkins was also subject to a mandatory consecutive term of 24 months based on the aggravated identity theft conviction. (*See* PSR ¶ 104.)

Of primary concern here is Hopkins's criminal history. Hopkins's prior offenses span a wide field of criminal activity, including, *inter alia*, aggravated arson, burglary, theft, felon in possession, criminal mischief, and armed robbery (PSR ¶¶ 41–48.) Hopkins has also previously performed poorly on supervision. (*See* PSR ¶¶ 43, 44.) Thus, Hopkins's history supports a Guideline sentence.

Moreover, Hopkins's dangerousness to the community as defined under 18 U.S.C. § 3142(g) is of concern here. *See* USSG §1B1.13(a)(2).[8] Section 3142(g)

---

[8] Prior to the 2023 Guidelines amendment, dangerousness under § 3142(g) was not a binding policy statement and was therefore considered only under the umbrella of § 3553(a). *See United States v. Bigman*, 2023 WL 3727476, at *3 (D. Mont. May 30, 2023). While there is still an overlap with § 3553(a), a finding as to dangerousness is now required. *See* USSG §1B1.13(a)(2).

lists four factors a court must consider an assessing danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). As discussed above, Hopkins has a serious criminal history and such conduct has not been subdued or mitigated by the medical issues discussed above. To the contrary, several of Hopkins's medical conditions and mental health issues were directly related to criminal conduct. Although the Court would not go as far as to find that Hopkins is ineligible for release under a § 3142(g) analysis, the current facts and circumstances weigh against such relief.

Finally, unlike several other defendants with significant criminal histories that have sought compassionate release, Hopkins has served less than two years of the sentence. As such, Hopkins's history and characteristics considered at sentencing have not fundamentally changed, distinguishing Hopkins from a defendant that has served a significant prison term.

Based on the foregoing, the low-end Guideline sentence Hopkins received

remains appropriate here. Reducing Hopkins's sentence based on the current record would denigrate the seriousness of the offense and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

## IV. Pro Se Motion to Withdraw Plea

Finally, Hopkins has filed a pro se request to withdraw the plea in the case, arguing that the guilty plea was not voluntary for a litany of reasons, including that trial counsel was ineffective for forcing Hopkins to accept the plea deal by taking advantage of Hopkins's diminished mental state and not informing Hopkins of all of the discovery in the case or the sentencing exposure. (*See* Doc. 158.) Hopkins further argues, *inter alia*, that the facts proffered at the change of plea did not meet the elements of the crime charged, several facts contained in the PSR are "lies," and that the prosecutor on the case had a personal animus against Hopkins. (*See id.*) The law does not permit Hopkins to withdraw the plea at this stage of the proceeding. Prior to sentencing, a plea may be withdrawn if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2). After sentencing, however, a "plea may be set aside only on appeal or by motion under 28 U.S.C. § 2255." *United States v. King*, 257 F.3d 1013, 1022 (9th Cir. 2001). None of the above arguments were pursued as part of Hopkins's subsequent, amended § 2255 motion. (*See* Docs. 175, 176; *see* Doc. 154 at 2 (explicitly cautioning that "[t]he amended motion will entirely supersede Hopkins'

18

pro se submissions").) They are therefore not considered here.

## CONCLUSION

Accordingly, IT IS ORDERED:

1. Hopkins's motion to vacate, set aside, or correct the sentence in the case under 28 U.S.C. § 2255 (Docs. 94, 108, 110, 116, 123, 132, 175) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Hopkins files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case are terminated.

4. The clerk shall open a civil case and close it by entering judgment in favor of the United States and against Hopkins.

5. Hopkins's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 120, 146) is DENIED.

6. The stay of Hopkins's motion to withdraw plea, (*see* Docs. 158, 171), is LIFTED. The motion to withdraw (Doc. 158) is DENIED.

DATED this 18th day of February, 2025.

Susan P. Watters, District Judge
United States District Court